Daniel D. Eckert Volusia County Attorney Legal Department
QUESTION:
1. May the County Council of Volusia County expend confiscated funds, absent a request from the sheriff/director of public safety?
2. May the County Council of Volusia County expend confiscated funds, absent a certification from the sheriff/director of public safety?
3. May any other law enforcement official of the county, such as the chief of the beach rangers or the chief of the airport police make a request or certification for the expenditure of confiscated funds under the Florida Contraband Forfeiture Act?
4. May funds already awarded to the county under the Florida Contraband Forfeiture Act be used to fund or reimburse the county for the cost of:
a. A school resource officer; b. A special enforcement team patrolling an interstate highway; c. All or part of the salaries of narcotics division personnel?
SUMMARY:
1. The County Council of Volusia County may not expend confiscated funds pursuant to the Florida Contraband Forfeiture Act absent a request from the sheriff/director of public safety.
2. The County Council of Volusia County may not expend confiscated funds pursuant to the Florida Contraband Forfeiture Act absent a certification from the sheriff/director of public safety that the proposed expenditure complies with s. 932.704(3)(a), F.S. (1990 Supp.).
3. The issue as to whether the beach rangers have lawfully been granted certain law enforcement powers under the charter is currently pending before the courts. Therefore, this office cannot comment upon the authority of the chief of the beach rangers to request or certify expenditures under the contraband forfeiture act. However, the chief of the airport police would not appear to be authorized, in place of the sheriff/director of the Department of Public Safety, to request the expenditure of special law enforcement trust funds or to certify such expenditures pursuant to s. 932.704(3)(a), F.S. (1990 Supp.).
4. Funds may be expended for school resource officers and for other law enforcement purposes provided they are not used to meet the normal operating needs of the law enforcement agency.
AS TO QUESTIONS 1 AND 2:
As your questions are interrelated, they will be answered together.
Under the authority of s. 1(d), Art. VIII, State Const., the constitutional offices of sheriff and county commissioner were abolished by the Volusia County Home Rule Charter Act, and the duties of these officers were transferred to other offices.[1]
In the case of the sheriff, the duties and functions "prescribed by the Constitution and Laws of Florida for the office of sheriff are hereby transferred to the Department of Public Safety . . . ."[2] The county council was established as the legislative branch of the county.[3]
The office has stated that the fact that the duties of a constitutional officer are transferred by county charter to another officer when the constitutional office is abolished does not change the existence of such duties. The officer to whom such duties are assigned must carry them out.[4]
Under the charter, the county manager serves as the head of the administrative branch of government.[5] The county council, however, is prohibited from making administrative changes in any department headed by an elected director.[6] The sheriff serves as the elected director of the Department of Public Safety.[7]
The county operates under a unified and uniform budget system,[8]
with the council reviewing and acting upon a tentative budget as submitted by the county manager.[9]
The charter provides that the county council shall "[r]ievew the budgetary requests including salaries and make the finalbudgetary determinations and appropriations for all County governmental operations including . . . all administrative departments of the government. . . . "[10] (e.s.)
In AGO 74-265 this office concluded that under the Volusia County Home Rule Charter Act, the Sheriff of Volusia County, serving as head of the Department of Public Safety, was not entitled to the benefits granted the constitutional office of sheriff to appeal his budget to the Administration Commission or to exercise the independence of a constititutional sheriff in making expenditures.[11]
As noted in that opinion, the county council was responsible under the charter for final budgetary determinations and appropriations for all administrative departments of the county.
Sections 932.701-932.704, F.S., constitute the Florida Contraband Forfeiture Act.[12] The act authorizes the seizure and forfeiture of contraband articles as well as the vessels, motor vehicles, aircraft and other conveying contraband. Under the act, detailed procedures are set forth to effectuate such forfeitures and for the disposition of forfeited property.
The act provides that after payment of certain liens and costs,[13]
the remaining proceeds from a forfeiture are to be deposited in a special law enforcement trust fund established by the board of county commissioners. The governing body of the local government effecting the forfeiture is accountable for the special law enforcement trust fund established pursuant to s.932.704(3)(a), F.S. (1990 Supp.), and is vested with the authority to determine for what law enforcement purposes monies from the trust fund are to be expended.[14]
Section 932.704(3)(a), F.S. (1990 Supp.), however, provides in part:
 These funds may be expended only upon request by the sheriff to the board of county commissioners . . . accompanied by a written certification that the request complies with the provisions of this subsection, and only upon appropriation to the sheriff's office . . . by the board of county commissioners . . . . (e.s.)
The request for expenditures must include a statement describing the anticipated recurring cost for the agency for subsequent fiscal years.
You indicate that inasmuch as the final budgetary determinations have been granted to the county council by the charter, you believe that the expenditure of special law enforcement trust funds by the county council is not contingent upon a request or certification by the sheriff. As noted above, the sheriff of Volusia County no longer has the authority to appeal to the Administration Commission or to exercise the independence of a constitutional sheriff in making expenditures since the charter grants the county council final budgetary authority. The requirements imposed upon the sheriff under the forfeiture act, however, do not relate to his budgetary authority or authority to make expenditures.
Section 932.704(3)(a), F.S. (1990 Supp.), requires that a sheriff request the expenditure and certify that it satisfies the requirements of the subsection. Such functions appear to relate to his responsibilities as the head of the law enforcement agency in the county. While the sheriff in Volusia County is no longer a constitutional officer, he is the head of the Department of Public Safety which, under the charter, is vested with law enforcement functions within the county.
Section 932.704(3)(a), F.S. (1990 Supp.), making the county commissioners responsible for expending the special law enforcement trust fund, does not conflict with the charter provision placing final budgetary authority in the county council. The council's final budgetary authority under the charter, however, does not grant the council the authority to initiate consideration of an expenditure of the special law enforcement trust fund. That authority is vested by s. 932.704(3)(a), F.S. (1990 Supp.), in the sheriff.
I find nothing in the requirement that the sheriff request and certify the expenditure which is inconsistent with the final budgetary authority of the council or with the charter provisions stating that the council reviews and acts upon tentative budget submitted by the county manager. Nor do I find anything in the charter which would make the sheriff's request or certification unnecessary.
Therefore, I am of the opinion that the County Council of Volusia County may not expend confiscated funds pursuant to the Florida Contraband Forfeiture Act absent a request for such expenditure and certification that the expenditure complies with s.932.704(3)(a), F.S. (1990 Supp.), from the sheriff/director of public safety.
AS TO QUESTION 3:
As noted above, the functions and duties prescribed by the Constitution and laws of this state for the office of sheriff have been transferred under the charter to the Department of Public Safety, headed by the sheriff/director of public safety. The charter, as amended in 1986, authorizes the county council to enact ordinances comprehensively regulating public health, safety, and welfare.[15] According to your letter, the council enacted an ordinance providing for beach rangers within a Department of Beach Management.
The resolution of your third question with respect to the beach rangers would appear to depend on whether the county council has validly vested certain law enforcement functions normally performed by the sheriff's office in another county agency or officer under the terms of the county charter. This office has been advised that the question as to whether the charter vests exclusive law enforcement functions in the Department of Public Safety or whether certain law enforcement powers have been granted to the beach rangers is now pending before the court.[16]
Inasmuch as this issue is before the courts, this office must decline to comment upon this matter at the present time.[17]
You also ask about the airport police. From the information attached to your inquiry, it appears that the airport police were created by county ordinance pursuant to Ch. 332, F.S.[18]
Pursuant to s. 332.08(2)(a), F.S., a municipality which is defined to include a county,[19] is authorized to appoint airport guards or police with full police powers.[20]
This office in AGO 91-39 considered whether a school district security department, which had been granted law enforcement functions pursuant to special act, was a law enforcement agency which may share in the proceeds from a contraband forfeiture proceeding. While acknowledging that such officers, based upon the powers granted by the special act, appeared to be law enforcement officers, this office concluded that the school board's security department did not fall within the law enforcement agencies enumerated in the contraband forfeiture act, which may share in the proceeds from a contraband forfeiture proceeding.
While "law enforcement agency" is not defined for purposes of ss. 932. 701-932.704, F.S. the act, in prescribing the manner in which forfeited funds are to be distributed, speaks only to counties, municipalities and state agencies. While you state that the chief of the airport police is a police chief, presumably analogizing him to a municipal police chief, the airport department is not a municipality and its police officers, while they may constitute law enforcement officers, are not municipal police officers.
Section 932.704(3)(a), F.S. (1990 Supp.), places certain requirements upon the sheriff of a county regarding the expenditure of confiscated funds. As discussed in Questions One and Two, such functions are vested in Volusia County in the Department of Public Safety and the sheriff as the head of the department. Moreover, under the charter, the county council is prohibited from making administrative changes in any department headed by and elected director, such as the Department of Public Safety.[21]
As this office stated in AGO 91-39, only those law enforcement agencies enumerated in the contraband forfeiture act any share in the proceeds from a forfeiture proceeding under that act. While Ch. 33,2 F.S., authorized the appointment by a county of airport police or guards, I find nothing which would divest the sheriff as head of the Department of Public Safety of his responsibilities under s. 932.704(3)(a), F.S. (1990 Supp.), in favor of the airport police department.
Therefore, I am of the opinion that the chief of the airport police, in place of the sheriff/director of the Department of Public Safety, is not authorized to request the expenditure of special law enforcement trust funds or to certify such expenditures pursuant to s. 932.704(3)(a), F.S. (1990 Supp.).
AS TO QUESTION 4:
An examination of the Florida Contraband Forfeiture Act makes it clear that the act was not intended to be a deficit reducing measure or program. Section 932.704(3)(a), F.S. (1990 Supp.), limits the use of forfeiture funds by providing in part that the remaining proceeds
may be expended only to defray the costs of protracted or complex investigations; to provide additional technical equipment or expertise, which may include automated fingerprint identification equipment and an automated uniform offense report and arrest report system; to provide matching funds to obtain federal grants;or for school resource officer, crime prevention, or drug abuse education programs or such other law enforcementpurposes as the board of county commissioners . . . deems appropriate and shall not be a source of revenue to meet normaloperating needs of the law enforcement agency. . . . (e.s.)
You ask whether funds already awarded to the county under the contraband forfeiture act may be used to fund or reimburse the county for the costs of a school resource officer, a special law enforcement team patrolling the interstate highway; or for all or part of a narcotics investigation division.
a. School resource officer
The Legislature, in specifically authorizing the use of forfeiture funds for school resources officers, has made the determination that the expenditure of trust funds for such a purpose is appropriate and does not constitute a source of revenue to meet normal operating needs of the law enforcement agency. Thus, the expenditure of special law enforcement trust fund monies for school resource officers would appear to be authorized even when such officers have previously been funded from other sources.
b. Special law enforcement team
The county believes that the special law enforcement team patrolling the highways may be funded from the law enforcement trust fund monies as "either agency costs of forfeiture, the costs of a protracted or complex investigation, or as an other law enforcement purpose." It appears that this function has previously been funded from general revenue funds of the county rather than trust funds.
Initially, it should be noted that agency costs of forfeiture are to be reimbursed prior to any remaining proceeds being placed in the special law enforcement trust fund. Thus, it would not be an appropriate use of trust fund monies to reimburse such costs. Nor does the provision ins. 932.704(3)(a), F.S. (1990 Supp.), for complex or protracted investigation appear to be applicable. From the information which is either complex or protracted, but rather a number of nonrelated investigations conducted by the patrol. This office has not been presented with any information that any of the investigations in question are either complex or protracted so as to justify the use of trust fund monies. The use of trust funds for such purposes would not appear to fall within any of the other enumerated authorized expenditures.
Section 932.704(3)(a), F.S. (1990 Supp.), authorizes the use of trust fund monies for "other law enforcement purposes." This office, however, has stated that such funds cannot be used to meet the normal operating needs of the law enforcement agency.
For example, in AGO 86-48, this office stated that a county was not authorized to use the funds to construct a building to be used by the sheriff in storing evidence. Space for the storage of evidence is one of the normal operating needs of the sheriff in carrying out his statutory duties and represented a continuing, ongoing or regular duty of that office. Thus, such activity did not represent an extraordinary program or purpose beyond what is usual, normal or regular. Monies from the trust fund, therefore, could not be expended for that purpose.[22]
The regular patrol of the roads within the county to make lawful traffic stops and searches of such vehicles would appear, on its face, to represent a continuing, ongoing or regular duty of that office. While you state that the sheriff did not assume such duties prior to his assuming his office under the charter, I cannot conclude, based upon the limited information presented to this office, that this constitutes an extraordinary program or purpose beyond what is usual, normal or regular; rather you refer to such responsibilities as "regular, recurring and frequent." It, therefore, appears that the special law enforcement trust fund monies may not be expended for that purpose.
c. Salaries of narcotics division personnel
You also inquire about the use of trust fund monies to pay all or part of salaries of narcotics division personnel. This office stated in AGO 89-78 that trust funds may not be used to augment salaries of police officers since the payment of salaries of police personnel would appear to be a normal operating expense of the police department.
Such rationale would appear to be equally applicable here. This office has not been presented with any information that such funds would be used to acquire additional technical equipment or expertise for the division. Therefore, based upon the information presented to this office, it appears that special law enforcement trust funds may not be used for the purpose of funding the narcotics division of the Department of Public Safety.
RAB/tjw
[1] Chapter 70-966, Laws of Florida.
[2] Section 601.1(2), Art. VI, Volusia County Charter.
[3] Article III, Volusia County Charter.
[4] See, AGO's 73-356 and 74-265.
[5] See, ss. 401 and 403, Art. IV, volusia County Charter.
[6] Section 603, Art. VI, Volusia County Charter.
[7] Section 602.1(1), Art. VI, Volusia County Charter.
[8] Section 1102, Volusia County Charter.
[9] Sections 1103.2 and 1103.3, Volusia County Charter.
[10] Section 307(3), Art. III, Volusia County Charter.
[11] See, s. 30.49, F.S. (1990 Supp.) and s. 39.53, F.S.
[12] See, s. 932.701(1), F.S.
[13] See, s. 932.704(3)(a), F.S. (1990 Supp.), requiring the proceeds be first applied to :
1. payment of the balance due on any lien preserved by the court in the forfeiture proceedings; 2. payment of the cost incurred by the seizing agency in connection with the storage, maintenance, security, and forfeiture of such property; 3. payment of court costs incurred in the forfeiture proceeding.
[14] See, e.g., AGO's 83-30 and 81-99.
[15] See, s. 205.3, Art. II, Volusia County Charter.
[16] See, State v. Tucker, Case No. 91-37983MMAES (7th Cir. Volusia Co.).
[17] See, Statement Concerning Attorney General Opinions providing that "[i]n order not to intrude upon the constitutional prerogative of the judicial branch, opinions are not rendered on questions pending before the courts . . . ."
[18] See, Volusia County Ordinance 79-25.
[19] Section 332.01(1), F.S., defining "Municipality" for purposes of ss. 332.01-332.12, F.S., to mean any county, city, village or town of this state.
[20] Section 322.08(2)(b), F.S., providing in part that regulation adopted by a county operating one or more airports shall be enforced as are the criminal laws.
[21] Section 603, Art. VI, Volusia County Charter.
[22] And see, AGO 83-9 (law enforcement trust fund could not be used to compensate physician's assistant to render medial services at county jail since provision of medical services to county prisoners was normal operating expense of sheriff's office); AGO 84-69 (installation or maintenance of traffic control devices funded by trust fund impermissible). But see, Inf. Op. to Allen Fallik, dated June 17, 1988 (purchase of personal computers to be used by police for intelligence analysis permissible use for trust funds as "additional technical equipment").